FERNANDO SIERRA BERDECÍA, COMMISSIONER OF LABOR OF PUERTO RICO, ETC., Petitioner, *v.* DISTRICT COURT OF PUERTO RICO, SAN JUAN SECTION, EMILIO S. BELAVAL, JUDGE, Respondent. THE SHELL COMPANY, Intervener.

No. 1954. Argued October 1, 1952.—Decided November 14, 1952.

---

*Joaquín Gallart Mendía* and *Domingo Candelario* for petitioner. *Fernando Ruiz Suria* for intervener, respondent in the main action.

MR. JUSTICE ORTIZ delivered the opinion of the Court.

The petitioner herein filed in the former Municipal Court of Puerto Rico, First Division of San Juan, a complaint in representation and behalf of Rafael Vizcarrondo, a workman. The following is alleged and prayed for therein:

"2. Rafael Vizcarrondo, a workman, worked for the respondent in a lucrative business of furnishing fuel to several air lines in San Juan, Puerto Rico, from November 1946, to October 1949, which business operated during the seven days of the week by virtue of a permit granted by the Commissioner, petitioner herein, to the respondent to employ workmen in the rendering of such service during Sundays and holidays, pursuant to the provisions of Act No. 80 approved May 5, 1931.

"3. In his aforesaid employment Rafael Vizcarrondo worked on the seventh days (days of rest) during the hours and for the wages detailed in Exhibit 1 attached hereto and made an integral part hereof.

"4. The respondent paid Rafael Vizcarrondo for the aforesaid hours worked on such seventh days a regular rate of wages when it was bound to pay a double rate for such hours pursuant to the provisions of Act No. 289 approved April 9, 1946 (Sess. Laws, p. 682), and Act No. 379 approved May 15, 1948 (Sess. Laws, p. 1254), owing to the said Rafael Vizcarrondo the difference, which amounts to $113.41 and which the respondent refuses to pay to the workman despite the numerous steps taken and demands made in that connection by the petitioner.

"5. The respondent is bound to pay Rafael Vizcarrondo another sum equal to the foregoing amount claimed as liquidation of damages, pursuant to the provisions of the aforesaid Act No. 379 of 1948.

"WHEREFORE, the petitioner respectfully prays this Honorable Court to render judgment granting this complaint and consequently ordering the respondent to pay to the workman, Rafael Vizcarrondo, the amount of $226.82."

The respondent answered accepting some of the averments of the complaint and denying others and, finally, the court admitted a stipulation of facts presented by the parties, whereupon the case was submitted. The municipal court entered judgment dismissing the complaint, and the petitioner herein appealed to the former District Court of Puerto Rico, San Juan Section.

Under the same conditions above set forth, the parties submitted the case to the latter court for decision.[1]

[1] The stipulation of facts submitted by the parties reads:

"Now come the parties hereto by their undersigned attorneys, respectively, and hereby stipulate the following facts:

"1. That Rafael Vizcarrondo, the workman in whose representation and behalf the Commissioner of Labor of Puerto Rico files this complaint, received, during the dates in which he worked for the respondent (from November 1946, until October 1949), a day of rest in each calendar week.

"2. That notwithstanding that the workman, Rafael Vizcarrondo, enjoyed a day of rest in each calendar week, the respondent, The Shell Co. (Puerto Rico) Limited, accepts that during the periods set forth in Exhibit I, which is made part of the complaint, Vizcarrondo worked *consecutively* seven or more days without enjoying one of rest at the end of six of work, as required by Act No. 289 of April 9, 1946.

"3. The parties agree to illustrate by way of the following example the scope of the stipulations contained in the two preceding paragraphs:

"EXAMPLE

"A workman works for his employer and gets Monday, September 1, 1947, as a day of rest. He then works consecutively from Tuesday the 2d until Friday the 12th of the same month and year, and is given Saturday the 13th as a day of rest. Notice that the workman has received a day off in each one of these two calendar weeks (paragraph 1 of this stipulation) but he has worked uninterruptedly from Tuesday, September 2 until Friday, the 12th of that same month, that is, 10 consecutive days (*sic*) in all, without enjoying one day of rest at the end of 6 working days as prescribed by Act No. 289 of April 9, 1946 (paragraph 2 of this stipulation).

"4. It is stipulated between the parties that the respondent, The Shell Company (Puerto Rico) Limited, is a commercial enterprise subject to the provisions of § 553 of the Penal Code of Puerto Rico, and that it was subject thereto during the different periods covered by the claim in this case.

"5. The parties stipulate further that during all the periods covered by the claim herein, the respondent, The Shell Company (Puerto Rico) Limited, had a permit issued in its favor by the Commissioner of Labor of Puerto Rico under the authority of Act No. 80 of 1931, as amended, authorizing it to work certain employees, including the petitioner, Rafael Vizcarrondo, during Sundays and other legal holidays.

"6. The parties submit this case to the Honorable Court on the basis of the pleadings and of this Stipulation of Facts, as well as on the basis of the briefs to be duly and alternately offered."

The district court entered judgment dismissing the complaint. As findings of fact, the trial judge set forth the following:

"1. That the petitioner Rafael Vizcarrondo, a workman, received a day of rest in each calendar week comprised in the dates on which he worked for the respondent from November 1946, until October 1949.[2]

"2. That despite having enjoyed a day of rest in each calendar week, said workman worked consecutively seven or more days without enjoying one of rest at the end of six of work during the periods indicated in Exhibit I that was made a part of the complaint.

"3. That the respondent, The Shell Company (Puerto Rico) Limited, is a commercial enterprise subject to the provisions of § 553 of the Penal Code of Puerto Rico (Closing Act) and that it was subject to such provisions during the different periods covered by the complaint herein.

"4. That during all the periods covered by the complaint herein, the respondent, The Shell Company (Puerto Rico) Limited, had a permit issued in its favor by the Commissioner of Labor of Puerto Rico under the authority of Act No. 80 of 1931, as amended, authorizing it to work certain employees, including the petitioner, Rafael Vizcarrondo, on Sundays and other legal holidays."

The court *a quo* stated in its conclusions of law that (1) Act No. 289 approved April 9, 1946, as amended, is not applicable to the respondent for the reason that it operates a commercial enterprise subject to the provisions of § 553 of the Penal Code (Closing Act); and (2) that the permit granted by the Commissioner of Labor to the respondent to work with certain employees (including the workman in question) on Sundays and holidays, does not have the scope, as alleged by the petitioner, of exempting the respondent from complying with the Closing Act, or subjecting it, therefore, to Act No. 289 of 1946.

The petitioner alleges that the lower court committed the following error:

---

[2] The claim covers the period between December 13, 1946, and August 10, 1949.

"The lower court committed a serious error in concluding that under the provisions of Act No. 289 of April 9, 1946, and of Act No. 379, of May 15, 1948, an industry, subject to the provisions of the Closing Act (§ 553 of the Penal Code) but which has obtained from the Commissioner, today Secretary of Labor of Puerto Rico, the permit provided for by Act No. 80 of May 5, 1931, as amended, to employ workmen on holidays, complies with the aforesaid Acts Nos. 289 and 379 in granting such employees a day of rest in each calendar week, and does not have to grant said employees a day of rest after six consecutive days of work or else to pay them·at double rate for the hours worked on said seventh day."

 Section 553 of the Penal Code, as amended, provides in part as follows:

"That all day Sunday, except when the 24th of December and the 1st and 5th of January fall on Sunday; on the first Monday in September (Labor Day) and the 4th of July; on all legal holidays from 12 a.m.; on all Saturdays from 9 p.m.; on all working days from 6 p.m., and on the 24th and 31st days of December, and the 5th day of January, of each year, from 10 p.m., commercial and industrial establishments shall remain closed to the public and one hour after closing, no work of any kind shall be permitted the employees of said establishments, except those stated below: . . . . ."

It then sets forth the commercial and industrial establishments expressly exempted from the scope of the Act. Paragraph 2 of said Section, as amended by Act No. 110 of 1937 (Sess. Laws, p. 258), provides the following:

"Employees and clerks of enterprises and establishments exempted by law, and who render services on the basis of an annual, monthly, or weekly salary, or in any form other than for wages or piece-work at a fixed price, shall be entitled to one day of rest for every six days of work, at full salary."[3]

[3] As it read previously, this Section literally referred to enterprises and establishments not exempted by law. Such provision has been construed by this Court in the sense that the word "not" was inadvertently inserted, and that, therefore, § 2 should be construed as referring to enterprises and establishments exempted by law. (*Parrondo* v. *L. Rodríguez & Co.*, 64 P.R.R. 418.) It is interesting to note that in the Compilation of

Both parties have stipulated that the intervener herein, namely, the petitioner's employer, is one of the establishments subject to the provisions of § 553 and that it was subject to such provisions during the different periods comprised in the claim in this case. However, it was also stipulated that the intervener had a permit issued in its favor by the Commissioner of Labor of Puerto Rico under the provisions of Act No. 80 of 1931 (Sess. Laws, p. 496), as subsequently amended, authorizing it to utilize the workman in question during Sundays and other legal holidays. Said Act No. 80 of 1931 was amended by Act No. 24 approved November 15, 1935 (Sess. Laws, p. 188), applicable hereto as to the period of time involved in the complaint, from December 13, 1946, to May 14, 1947, on which date another amendatory Act, hereinafter referred to, was approved. The aforesaid Act No. 24 of 1935 provides in part as follows:

"Section 1.—That the Commissioner of Labor is hereby authorized to grant permits to employers or owners of industrial and *commercial* establishments to employ workmen or *employees* during extra hours of the day or night, when, in the judgment of the said Commissioner, it may be necessary for the purpose of permitting said employers or owners to complete urgent or necessary works which must be finished within a determined time in shops, factories, or any other industrial or commercial establishment in Puerto Rico.

"Whenever an employer or owner finds it necessary to avail himself of the provisions of this Act, he shall notify the Commissioner of Labor, and in his absence, the assistant commissioner or such person as may be substituting him as the head of said Department, that such necessity exists and of the time that will be needed to complete the work, and the Commissioner or assistant commissioner, or the person substituting him as head of the Department, may issue the proper permit; *Provided,*

---

the Revised Statutes and Codes of Puerto Rico of 1941 the same mistake of inserting the word "not" was made, notwithstanding that said word had been eliminated by Act No. 110, approved May 13, 1937. The last amendment to the aforesaid § 553 of the Penal Code was approved by virtue of Act No. 250 of May 9, 1950 (Sess. Laws, p. 656), which is in no way applicable to this case.

That for any extra time which the operatives or employees of said industrial or *commercial* establishment may work, when employers or owners have been duly authorized in accordance with the provisions of this Act, *they shall be paid a double rate of wages for each hour; And provided, further,* That upon the granting of the permit, the Commissioner of Labor shall be authorized to investigate the motives or reasons of the employer or owner for making the request; and if he finds that the facts have been maliciously falsified or that the request was not justified, such facts shall constitute a misdemeanor, and, within the sixty days following the granting of the permit, the corresponding complaint may be filed." (Italics ours.)

By virtue of Act No. 418 of May 14, 1947 (Sess. Laws, p. 842), it was in part provided as follows:

". . . . . *Provided, That for any extra time which the work- men or employees of said industrial or commercial establishment may work, when employers or owners have been duly authorized in accordance with the provisions of this Act, they shall be paid a double rate of wages for each hour,* if the said workmen or employees have worked during that same day for a total period of eight or more hours, and a single rate of wages if they are workmen or employees who have not worked during the eight hours immediately preceding the period of extra hours. It shall be the duty of every employer or owner of an establishment to whom a permit has been granted, to send to the Department of Labor, within the ten (10) days following the completion of the work, a duplicate of the payroll of the employees used therein, setting forth under oath the name of every employee, his address, type of work performed, time, and wages paid; *And provided, further,* That upon the granting of the permit, the Commissioner of Labor shall be authorized to investigate the motives or reasons of the employer or owner for making the request; and if he finds that the facts have been maliciously falsified or that the request was not justified, such facts shall constitute a misdemeanor, and, within the sixty days following the granting of the permit, the proper complaint may be filed." (Italics ours.)

Until May 15, 1948, on which date Act No. 379 was approved, the rights of workmen of enterprises or establishments subject to the aforesaid § 553 of the Penal Code, who worked at times expressly prohibited by law but under a

permit from the former Commissioner of Labor, were determined in accordance with the Acts above mentioned. Nevertheless, Act No. 379 of 1948 (Sess. Laws, p. 1254), which provided double pay for each extra hour worked, provided in part as follows:

"Section 4.—Extra hours of work are:

". . . . . . . . . . . .

"(d) The hours that an employee works for his employer during the days or hours when the establishment in which he renders services should remain closed to the public by provision of law; *Provided, however,* That the hours worked by an employee in the service of his employer during the days or hours in which the establishment must remain closed to the public shall not be considered extra hours of work, when the employer has obtained from the Commissioner of Labor the permit required by Act No. 80 of May 5, 1931, as heretofore or hereafter amended, and the total number of hours worked by the employee during said day does not exceed eight hours, and the total number of hours worked during the week does not exceed forty-eight hours;

"(e) The hours that an employee works for his employer during the day of rest heretofore or hereafter fixed by law in the case of businesses and industries not subject to the closing of their establishments";

Act No. 188 of May 6, 1949 (Sess. Laws, p. 594), amended once more Act No. 80 of 1931 regarding the permit granted by the Commissioner of Labor and provided in part that the extra hours worked and the compensation of the work performed under said permits shall be determined and paid for in accordance with the provisions of the aforesaid Act No. 379 of May 15, 1948.

However, what the workman herein alleges is that his case is covered by Act No. 289 approved April 9, 1946. Section 1 of said Act provides as follows:

"All employees of any commercial or industrial establishment, enterprise, or lucrative business not subject to the provisions of Section 553 of the Penal Code of Puerto Rico, as subsequently amended, relative to the closing to the public, shall be entitled to one day of rest for every six (6) working days.

"For the purposes of this Act, one day of rest shall be understood as a period of twenty-four (24) consecutive hours."

Section 4 of the aforesaid Act provides:

"Any employer who employs or permits an employee to work on the day of rest established by this Act, shall be obliged to pay said employee for the hours worked during such day of rest a rate double the salary rate agreed upon for regular working hours."

The workman involved here does not make his claim on the basis of the compensation he should be paid for the work he did on Sundays and other holidays permitted by the Commissioner. Rather, he alleges that notwithstanding that he enjoyed a day of rest in each calendar week, since he worked consecutively seven or more days without enjoying any day of rest at the end of six days of work during the period covered in the claim,[4] the aforesaid Act No. 289 of 1946 is applicable to the circumstances of this case. Said Act is exclusively applicable to employees of enterprises and establishments not subject to the provisions of § 553 of the Penal Code. Just as stipulated by both parties, the intervener was subject to the aforesaid provisions. The fact that the Commissioner of Labor had granted the intervener a permit to employ workmen or employees during extra hours of the day or night, even on Sundays and holidays, does not imply that the intervener was exempt from the provisions of § 553. The Section itself specifically and expressly points out which are the enterprises and establishments not subject thereto.

---

[4] The example attached to the stipulation serves to illustrate the allegations of the workman. For example, he gets Monday, September 1, 1947, as a day of rest and then works consecutively from Tuesday the 2d until Friday the 12th of that same month and year, and is given Saturday the 13th as a day of rest. He received a day off in each week, but worked for "ten" (sic) consecutive days without enjoying a day of rest at the end of six days of work, this being the situation contemplated by the aforesaid Act No. 289 of 1946. The workman has not raised any question regarding the compensation he should be paid for his work during Sundays, but he does pray that he be paid double compensation for the work he performed on each seventh day after six consecutive days of work.

In accordance with Act No. 80 of 1931, as amended, the permit granted by the Commissioner of Labor is provisional and transitory and refers to emergency situations regarding the completion of urgent or necessary works which must be finished within a determined period of time. That authorization granted to the Commissioner as to granting such permits to employers does not entail the power and authority to determine which industries must be permanently subject to the Act, or which must be considered exempt. During the effectiveness of the permit, the employer, intervener herein, was authorized, provisionally, not to comply with the provisions of § 553, but such transitory exemption did not classify it within the enterprises not subject to the aforesaid legal provision.

In *Cardona* v. *District Court*, 62 P.R.R. 59, 70, it was stated as follows:

"Act No. 80, Laws of Puerto Rico, 1931 (p. 496), as amended by Act No. 24, Laws of Puerto Rico, 1935 (p. 188), authorizes the Commissioner of Labor to grant permits to employers in commercial or industrial establishments to employ persons during extra hours of the day or night in order to complete urgent or necessary work which must be finished within a determined period of time. This statute provides for a double rate of wages for each hour thus worked. Act No. 80 was obviously a product of experience gained under § 553. It having been discovered that it was for the benefit of the community as a whole that such establishments be permitted to remain open to complete work under certain *special* circumstances, provision was made that *temporary* waiver of the law could be obtained by permit from the Commissioner. But to guard employees against undue indulgence of the employer by the Commissioner, the Act provides for double pay for such work. Consequently, an employer would not be apt to apply for a waiver save in a bona fide case of emergency." (Italics ours.)

We understand that the legislative intent in approving Act No. 289 of 1946 was to make it applicable to those enterprises or establishments not subject to the provisions of § 553 of the Penal Code, in accordance with the very terms

of said Section. The legislator did not intend to make said Act applicable to temporary situations arising under Act No. 80 of 1931; as amended. The very legislative history of the Acts already cited proves this. Act No. 289 of 1946, allegedly applicable to this case, makes no mention whatsoever of Act No. 80. As already noted, the oft-quoted Act No. 80 of 1931, was again amended by Act No. 418 of May 14, 1947, that is, subsequent to Act No. 289 of 1946, to the effect of providing that for any extra time which workmen of establishments authorized by the Commissioner may work, they shall be paid a double rate of wages for each hour, if the said workmen had worked during that same day for a total period of eight or more hours. No mention is made of Act No. 289 of 1946, which refers to establishments not subject to § 553. Consequently, there are two different situations that involve different standards as to the compensation to be paid. In 1949 the aforesaid Act No. 80 of 1931, was again amended, by virtue of Act No. 188 of 1949, and it is provided that the compensation for extra hours worked under a permit from the Commissioner shall be determined in accordance with the provisions of Act No. 379 of May 15, 1948, which is a general Act of extra hours, and no reference was made to Act No. 289 of 1946. Subsequent to this latter Act, the legislator has insisted on amending Act No. 80 of 1931, separately and independently from Act No. 289 of 1946. All of this indicates that Act No. 80 of 1931, as amended, refers to a special situation, independent and different from the field of action covered by the Act allegedly applicable to this case. We find this view affirmed again when we notice that subdivision (d) of § 4 of the General Act of Extra Hours (No. 379 of May 15, 1948), establishes a special formula as to pay for extra hours when the employer has obtained a special permit from the Commissioner of Labor under Act No. 80, whereas subdivision (e) of the same Section provides that the hours that an employee works for his employer during the day of rest theretofore or there-

after fixed by law in the case of businesses and industries not subject to the closing of their establishments shall be considered as extra hours subject to double pay. It is clear from that Act that the legislator treats differently employees working for an employer subject to a permit from the Commissioner and employees working for employers not subject to § 553 of the Penal Code.

The petitioner and claimant alleges that the view we are adopting thwarts the legislative purpose and intent to benefit workmen and causes a serious prejudice to those workmen who are in the same position as petitioner herein, inasmuch as the petitioner would be compelled to work, for example, for ten consecutive days, without being given double pay for the seventh day pursuant to the provisions of the aforesaid Act No. 289 of 1946.

In *Compañía Popular* v. *Unión de Empleados*, 69 P.R.R. 167, 172–3, it is stated as follows:

"The conclusion is inescapable that the Legislature gave daily and hourly employees in industries exempt from the Closing Law the same privileges employees have in industries which are required to close on Sunday. Employers in the latter category are compelled to give their daily and hourly employees a day of rest on Sunday; but the latter receive only the pay they earn on the six days they work. *Parrondo* v. *L. Rodríguez & Co., supra*, p. 428. Employees in exempted industries may or may not work on Sunday, depending on the requirements of their particular employers. But whether or not they work on Sunday, under Act No. 289 they are entitled to a day of rest—either Sunday or some other day—after six days of work. However, just as in the case of employees in non-exempt industries who rest on Sunday but receive no additional pay therefor, Act No. 289 provides a day of rest for daily and hourly employees in exempted industries without additional pay for the day of rest.

". . . . . . . . . . . .

"Section 4 reinforces this interpretation of § 1 of Act No. 289. It provides that if an employee works on his day of rest, he shall receive double pay at the rate for regular working

hours. This is premium, penalty or overtime pay exactly like that found in minimum wage and maximum hours statutes and decrees. Double pay is provided only for overtime work, the higher rate being designed to discourage overtime work. But if no work is done beyond the regular working hours, there is no pay for time not worked. And a seven-day week is discouraged, although not prohibited, by providing for (1) a day of rest without pay after six days of work and (2) double pay if work is required on the day of rest.

"The net effect is that Act No. 289 establishes a normal six-day work week for exempted industries in order to equalize conditions in the latter with those obtaining in ordinary industries. In both types of industry work must stop at a certain point—after a six-day week. A nonexempt industry cannot be operated on Sunday. If an exempted employer chooses to exercise his privilege to work seven days a week, he must pay double the regular rate for the seventh day. But if he operates on a six-day week basis, he is in exactly the same position as employers in ordinary industries.

"To hold that under § 1 an employee receives pay for the seventh day without working would be to thwart the intention of the Legislature expressed in § 4 that work on the seventh day should be paid for at double the regular rate. That is to say, under this interpretation, an employee who works on the seventh day would receive only ordinary pay in addition to the ordinary pay he was already entitled to receive without working. And, as a consequence, employers in exempt industries would be driven to a seven-day or five-day week, whereas the Legislature intended by Act No. 289 to encourage the establishment of a normal six-day week even for exempted industries. It therefore seems clear from §§ 1 and 4 that the employee is entitled to a day of rest without pay."

The foregoing case is not applicable to the circumstances of the case at bar. In that case the enterprise was expressly exempt from the provisions of § 553 of the Penal Code and Act No. 289 of 1946 was clearly applicable. The holding, in brief, was that workmen are not entitled to a day of rest with pay but that they shall be entitled to double pay if they work on the seventh day. It is pointed out, however, that the purpose of Act No. 289 was to discourage

a week of seven consecutive days of work. However, if the legislator wished to establish two different categories as to enterprises and establishments expressly exempted from § 553 of the Penal Code and enterprises and establishments temporarily operating under a provisional permit from the now Secretary of Labor, it is not our function to establish a standard different from that fixed by the legislator.

The inapplicability of Act No. 289 of 1946 does not mean that the workman making a claim has been left unprotected. Act No. 80 of 1931, as amended, in connection with Act No. 379 of 1948, contains a special formula as to the compensation to be paid in a case like the one at bar.[5] As already noted, the claim covers the period comprised between December 13, 1946, and August 10, 1949. Under the aforesaid Act No. 24 of April 15, 1935, amending Act No. 80 and applicable hereto as to the period of time included between December 13, 1946, and May 14, 1947, the workman is entitled to be paid a double rate of wages for each hour worked by him on Sundays or special days covered by the permit from the Commissioner of Labor. Neither the stipulation of both parties nor exhibit I attached to the complaint discloses which were those days or how many hours were worked in those days by the petitioner. The San Juan Section of the Superior Court of Puerto Rico, to which we are remanding this case, should hear evidence in that connection and make the proper conclusions and pronounce-

---

[5] The controversy in this case has centered about Act No. 289 of 1946, whose inapplicability we have determined. Nevertheless, reference is made in the complaint to Act No. 379 of 1948, which covers, in part, the compensation to be paid under the Act applicable hereto, namely, Act No. 80 of 1931, as amended, but the claim is made on the basis of the compensation to be paid because of the fact that the workman worked during the seventh day, which should be a day of rest, pursuant to the said Act No. 289 of 1946. We consider, in all fairness, that the case should be remanded to the lower court in order that in the light of the evidence that may be presented the compensation to be paid to the workman, if any, under Act No. 80 of 1931, as amended, may be determined, although it involves the corresponding amendments to the allegations, including the possible special defenses the intervener may present. (See 5 C.J.S. 1356.)

ments. It should do the same as to the period of time comprised between May 14, 1947, and May 15, 1948, applying the test established in Act No. 418 of 1947, that is, for any extra time worked by the petitioner on Sundays and special days authorized by the Commissioner of Labor, he shall be paid a double rate of wages for each hour if he worked on those days thus specifically authorized for a total period of eight or more hours, and a single rate of wages if they have not worked during the eight hours preceding the period of extra hours. As we construe that provision, if the workman has worked on one of those days specifically authorized for eight or more hours, he should be paid a double rate for each hour worked on those special days, including, without being limited thereto, the hours worked in excess of eight. If the workman has worked less than eight hours, he should be paid a single rate as to those hours worked. As to the period worked by the workman between May 14, 1947, and August 10, 1949, the provisions of Act No. 379 of 1948 are applicable insofar as "the hours worked by an employee in the service of his employer during the days or hours in which the establishment must remain closed to the public shall not be considered extra hours of work, when the employer has obtained from the Commissioner of Labor the permit required by Act No. 80 of May 5, 1931, as heretofore or hereafter amended, and the total number of hours worked by the employee during said day does not exceed eight hours, *and* ▪ the total number of hours worked during the week does not exceed forty-eight hours." (Italics ours.)

Said statutory provision implies that the workman, petitioner herein, would be entitled to double pay for all the hours he worked on the days specifically authorized by the Commissioner if he has worked on those days in excess of eight hours or if in the week he has worked in excess of forty-eight hours. In other words, even if the workman has

not worked in excess of eight hours on such special days, if he has worked in excess of forty-eight hours in the week, he is entitled to be paid on the basis of a double rate for each and every one of the hours he works on those special days, since, in that case, those hours worked on such days are considered as extra hours under § 4(d) of Act No. 379 of 1948, which establishes two requirements in order that the hours worked on special days authorized by the Commissioner may be considered as extra hours, to wit: (a) that the hours worked on such special days do not exceed eight hours, and (b) that the hours worked during the week do not exceed forty-eight hours. If any of those two requirements is not complied with, all the hours worked on days authorized by the Commissioner are considered as extra hours subject to double pay. It should be noted that as to the first requirement regarding the eight-hour workday, the formula established in Act No. 379 of 1948 is analogous to that established in the previous Act, No. 418 of 1947. Act No. 379 grants the workman an additional benefit as to the establishment of a new requirement regarding the work week of forty-eight hours. It should be noted, moreover, that even if the workman has not worked in excess of forty-eight hours during the week, if the first requirement is not complied with, that is, if the workman has worked in excess of eight hours on the days specifically authorized by the Commissioner, he is also entitled to double pay for each and every one of the hours worked on the days specifically authorized, the same as under Act No. 418 of 1947.

Section 4(d) of Act No. 379 of 1948 does not define a "week." A "week" has been defined, by the general jurisprudence, in two ways, either a calendar week, indicating the period of seven days from Sunday to Sunday—*Ronkendorff* v. *Taylor*, 29 U. S. (4 Peters, 3rd ed.) 212, 220; *Leach* v. *Burr*, 188 U. S. 510; *Chrysler Corporation* v. *Review Board*, 92 N. E. 2d 565—or the period of any seven consecutive days—*Jackson* v. *Guss*, 120 Pac. 353; *Carpenter* v.

*Okanogan County*, 299 Pac. 400; *In re Wright's Will*, 120 N. E. 725—all of this in accordance with a determined statutory context and with the special situation involved. Section 2 of Act No. 379 itself provides that forty-eight hours of work constitute a work week.[6] The context of the definition must depend on the actual relations prevailing between employers and workmen in a determined enterprise and in accordance with the special situation of each industry or economic activity. It is neither necessary nor socially useful to adopt a stern formula. (*Cf. Compañía Popular* v. *Unión de Empleados, supra.*) The test must be flexible and realistic. Different kinds of industries, establishments and enterprises may have different systems as to work weeks, from the point of view of accounting, pay-rolls, payment of wages, work shifts, hours of work, income, the nature of the work in itself and other elements concerning the relation with their workmen and the nature of the business or of the production process. In the instant case the controversy has referred to the applicability of Act No. 289 of 1946, and there was no evidence or stipulation regarding the application of § 4 (d) of Act No. 379 of 1948, and therefore, we do not have before us any element of proof as to the nature of the work week in the business of the intervener. When the case is remanded to the lower court, the latter should consider the evidence in connection with the elements we have mentioned in order that it may apply a concrete test pursuant to the provisions of the aforesaid § 4 (d). Of course, the nature of the "working week" should not be determined on the basis of the arbitrary or capricious selection of one of the parties. Instead, the determination must correspond to the objective reality of the system actually used, as shown by the accounting books or by any other trust-

---

[6] Mandatory Decree No. 5 regarding the beer and soda water industry provides that a 48-hour week shall be any period of seven days. It is defined as a period of seven consecutive days in Decrees No. 7 (theaters and motion-picture theaters), No. 8 (retail trade), No. 9 (bread, etc.), No. 12 (transportation) and No. 13 (laundry and dry cleaning).

worthy evidence as to the different elements we have mentioned.

Although the court *a quo* acted correctly in deciding that Act No. 289 of 1946 was not applicable to the case at bar, in order that it may consider and express an opinion on the additional evidence we have pointed out, on the basis of the legal tests above set forth, we must set aside the judgment and remand the case to the San Juan Section of the Superior Court of Puerto Rico for further proceedings not incompatible with this opinion.

Mr. Justice Sifre did not participate herein.